# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

Nana Obour Gyau )
A096-528-258 )
8520 Towne Manor Court )
Alexandria, VA 22309 )
)
Elizabeth Toku )
8520 Towne Manor Court )
Alexandria, VA 22309 )
)
     Plaintiffs, )          Civil Action No.
)
v. )
)
Jeff Sessions, Attorney General )
U.S. Department of Justice )
950 Pennsylvania Avenue, N.W. )
Washington, DC 20530-0001 )
)
Kimberly Zanotti, Field Officer Director )
US Department of Homeland Security )
USCIS )
Washington Field Office )
2675 Prosperity Avenue )
Fairfax, VA 20598-2400 )
)
Sarah Taylor, District Director )
US Department of Homeland Security )
USCIS )
Washington Field Office )
2675 Prosperity Avenue )
Fairfax, VA 20598-2400 )
)
Kirstjen M. Nielsen, Secretary, DHS )
245 Murray Lane, S.W. )
Washington, DC 20528 )
)
L. Francis Cissna, Director, USCIS )
20 Massachusetts Avenue, N.W. )
Washington, DC 20529 )
)
     Defendants )
_____)

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. The Plaintiffs, Nana Gyau and Elizabeth Toku, through undersigned counsel, complaint of the Defendants, Sarah Taylor, District Director, Washington District Office, U.S. Citizenship and Immigration Services; Kimberly Zanotti, Field Office Director, Washington District Office, U.S. Citizenship and Immigration Services; L. Francis Cissna, Director, U.S. Citizenship and Immigration Services; Kirstjen M. Nielsen, Secretary, U.S. Department of Homeland Security; and Jeff Sessions, Attorney General of the United States as follows:

## PREFATORY STATEMENT

1. This is an action brought pursuant to Section 10b of the Administrative Procedure Act, 5 U.S.C. §702, and 28 U.S.C. §1331, seeking review of a decision by the Defendant U.S. Citizenship and Immigration Services ("USCIS"), which was affirmed by the Board of Immigration Appeals ("BIA"), to deny a Form I-130 Petition for Alien Relative filed by Elizabeth Toku on behalf of her husband Nana Gyau ("the I-130 Petition"). The agency's decision to deny the I-130 Petition was arbitrary, capricious, an abuse of discretion, and was not supported by substantial and probative evidence. The Plaintiffs presented evidence in support of the I-130 Petition and probative evidence is lacking in the evidentiary record which supports the agency's allegation that Mr. Gyau engaged in marriage fraud and thus is precluded from approval of any subsequent visa petition pursuant to Section 204(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §1154(c). The agency's decision lacks an adequate basis and should be reversed.

2.  The I-130 Petition was supported by substantial evidence demonstrating the bona fide nature of the Plaintiffs' marriage.  Furthermore, the evidentiary record does not support USCIS's allegation of prior marriage fraud by Mr. Gyau.  The USCIS and BIA decisions rest on an unsubstantiated statement by Mr. Gyau's ex-wife Ms. Latasha Robinson that Mr. Gyau never reviewed or had the opportunity to address, which is hearsay.  As such, the statement was taken when Mr. Gyau was not present nor was he a party involved nor did Mr. Gyau have the opportunity to address the statement.  There is nothing in the evidentiary record to suggest that Mr. Gyau did not in fact have a bona fide marriage to Ms. Robinson.  Further, Mr. Gyau presented documents to show that he and Ms. Robinson did establish a marriage together including affidavits, joint lease agreements and joint bank statements.  The evidentiary record does not present substantial and probative evidence of marriage fraud and is therefore contrary to the established case law in this area.  The record does not support that Mr. Gyau entered into his marriage with Ms. Robinson to procure an immigration benefit and his permanent residence contrary to the agency erroneous speculation and conclusion.

3.  Consequently, the Plaintiffs seeks an order reversing the agency's decision as arbitrary, capricious, contrary to law, and unsupported by the evidence of record.  The agency's erroneous decision has caused irreparable and continuing harm to the Plaintiffs, as denial of the I-130 Petition deprives Mr. Gyau of the ability to obtain U.S. lawful permanent residency and renders him subject to removal from the United States, thereby resulting in separation from his U.S. Citizen wife  of eight

years and banishment from the country that has been his home for the past fourteen years.

### a. JURISDICTION

4. This is a civil action brought pursuant to 5 U.S.C. §701 et seq., the Administrative Procedure Act ("APA"), and 28 U.S.C. §1331 (federal subject matter jurisdiction), as well as 8 U.S.C. §1101 et seq., the Immigration and Nationality Act ("INA"). The original jurisdiction is vested in this Court by 8 U.S.C. §1329 (jurisdiction of the district courts), 28 U.S.C. §1346(a)(2) (civil actions against the United States), and 28 U.S.C. §2201 (declaratory relief), to redress the deprivation of rights, privileges, and immunities secured to the Plaintiffs.

### A. Subject Matter Jurisdiction

5. Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute, is entitled to judicial review thereof." 5 U.S.C. §702. The APA provides further that the "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. §704. The APA defines "agency action" to include "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. §551(13). Agency action includes a final decision denying an I-130 Petition for Alien Relative pursuant to INA §204(c) and 8 C.F.R. §204.2(a)(I)(ii). *See, e.g., Asamoah v. Napolitano,* 2010 U.S. Dist. LEXIS 129452, at *9 (D. Md. Dec. 8, 2010) ("The APA, in conjunction with the federal question jurisdiction statute, provides the statutory basis for a court to review a final agency action, in this case the USCIS's denial of

[plaintiff's] I-130 petition."); *see also Ginters v. Fraizer*, 614 F.3d 822, 828-29 (8th Cir. 2010) (ruling that U.S. District Court has subject matter jurisdiction to review USCIS's denial of I-130 Petition for Alien Relative); *Ogbolumani v. Napolitano*, 557 F.3d 729, 733 (7th Cir. 2009) (same); *Ruiz v. Mukasey*, 552 F.3d 269 , 274-76 (2d Cir. 2009) (same).

6. The APA does not independently provide a basis for subject matter jurisdiction. *Califano v. Sanders*, 430 U.S. 99, 107 (1977). "Pursuant to 28 U.S.C. §1331, though, a federal district court has jurisdiction over 'all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Liu v. Novak*, 509 F. Supp. 2d 1, 8 (D.D.C. 2007) (quoting 28 U.S.C. §1331). As this Court has recognized, "the APA, in conjunction with the federal question jurisdiction statute, provides the statutory basis for a court to review a final agency action, in this case, the USCIS's denial of [plaintiff's] I-130 petition." *Asamoah*, 2010 U.S. Dist. LEXIS 129452, at *9.

**B. Standing**

7. Since the Plaintiffs have suffered an injury- in- fact; the denial of their I-130 Petition and Mr. Gyau's consequent inability to obtain adjustment to lawful permanent resident status on that basis thus the Plaintiffs have standing for the complaint. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (holding that standing requires a plaintiff to show (1) an injury in fact, (2) a causal connection between the injury and the complained-of conduct, and (3) a likelihood that the injury will be redressed by a favorable decision). The Plaintiffs have standing as they have "'alleged such a personal stake in the outcome of the controversy' as to warrant their invocation of federal court jurisdiction and to justify exercise of the

court's remedial powers on [their] behalf." *Warth v. Seldin*. 422 U.S. 490, 498-99 (1975) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)); *see also Defenders of Wildlife v. Gutierrez*, 532 f.3d 913, 924 (D.C. Cir. 2008). As the courts have explained, "The redressability inquiry poses a simple question: If plaintiff secured the relief [he] sought, ... would it redress [his] injury?" *Wilderness Society v. Norton*, 434 F.3d 584 (D.C. Cir. 2006). A favorable decision by this Court, reversing the Defendants' unreasonable denial of the Plaintiff's I-130 Petition, will grant the Plaintiffs the relief they seek.

*C. Ripeness*

8.  This case is ripe for review because the Plaintiffs have exhausted their administrative remedies and no appeal of the agency's decision is pending. On January 23, 2018, the Board of Immigration Appeals ("BIA") dismissed the Plaintiff's appeal of USCIS's November 18, 2016 decision denying the I-130 Petition filed by Elizabeth Toku on behalf of her husband Nana Gyau. No further administrative review is available to the Plaintiffs. *See* 8 C.F.R. §1204.1. Thus, the BIA's decision is a final agency action that is ripe for review by this Court.

## II.   VENUE

9.  Venue is proper under 28 U.S.C. §1391(e), because this is an action against officers and agencies of the United States in their official capacities and no real property is involved in the action.

### III.   PARTIES

10.  The Plaintiff, Nana Gyau, is a native and citizen of Ghana who has resided in the
United States since 2004, for more than fourteen years.  Mr. Gyau is the intended
beneficiary of a Form I-130 Petition for Alien Relative ("I-130 Petition") filed by his
wife, Elizabeth Toku.  The Plaintiff, Elizabeth Toku, is a United States Citizen.  She is
the petitioner of an I-130 Petition filed on behalf of her husband, Nana Gyau.  Nana
Gyau and Elizabeth Toku have been married since August 2010, and they reside
together in Alexandria, VA.

11. The Defendants, Sarah Taylor, District Director, Washington District Office, U.S.
Citizenship and Immigration Services; Kimberly Zanotti, Field Office Director,
Washington District Office, U.S. Citizenship and Immigration Services; L. Francis
Cissna, Director, U.S. Citizenship and Immigration Services; Kirstjen M. Nielsen,
Secretary, U.S. Department of Homeland Security; and Jeff Sessions, Attorney
General of the United States are charged by law with the statutory and regulatory
obligation to determine eligibility for I-130 Immigrant Petitions for Alien Relative,
pursuant to INA §§201(b)(2)(A)(i), 204(a)(1)(A) and 8 C.F.R. §§204.1(a)(1), 1204.1.

### IV. STATEMENT OF FACTS

*A. Mr. Gyau and Ms. Toku's Current Marriage and I-130 Petition*

12. The Plaintiff, Nana Gyau, is a native and citizen of Ghana who was first admitted to
the United States in May 2004 as a B1/B2 nonimmigrant.  He has lived in the United
States since that time, for more than fourteen years.  Mr. Gyau is married to
Elizabeth Toku, a U.S. Citizen and they reside in Alexandria, VA.  They have been
married for eight years.

13. Ms. Toku and Mr. Gyau met at Ghana Catholic Community of Queen of Apostles, Arlington Diocese during the celebration of the Annual Feast Festival of St. Theresa of the Child Jesus' Association. Their cultural bond and traditions attracted each other. They started dating and Nana Obour Gyau proposed marriage which Ms. Toku accepted. The traditional demands of their culture required that Nana Gyau send his parents from Bechem, his hometown to Ms. Toku's family at Akrokeri in Ghana to perform the Akan marriage customary rites. This created strong ties between the two families. The couple attends all ceremonies and programs in the Ghanaian community with each other including funerals, traditional marriages, weddings, naming a newly born, among others. They have been happily married for the last eight years and live together in Alexandria, VA.

**B. Ms. Robinson's September 1, 2005 Withdrawal Which Was Not Provided by the Service and Was Not Discussed in the NOID**

14. Mr. Gyau married Ms. Latasha Robinson, for no other reason than love; their previous relationship was a bona fide marriage. They married in March 2005. The District Director in her conclusion relies on an alleged previous withdrawal request by Ms. Robinson dated September 1, 2005. We note this withdrawal request was not discussed at all in the Service's NOID. We also note the withdrawal request was not provided. As such, the Service did not afford the Petitioner an opportunity to address the Service's use of the withdrawal and they are incorrectly using the withdrawal request as substantive and probative evidence of marriage fraud. In the Decision, the Service utilizes the withdrawal request as corroboration and "contemporaneous evidence that casts doubt on the bona fide nature of the beneficiary's marriage to Ms. Robinson." Decision at 4. However, we note this

withdrawal request, which is cited by USCIS in its decision, is not in the record and could not be reviewed by the Beneficiary and/or counsel upon FOIA request and review. Therefore, the Service is utilizing the alleged 2005 statement, as substantial and probative evidence, which was 1) not cited in the NOID and 2) not provided to Ms. Toku and Mr. Gyau to review and address.

15. Further, to rebut the use of the alleged statement, we note, Ms. Robinson attended the March 16, 2010 interview (subsequent to the alleged 2005 withdrawal request) and submitted two affidavits completely explaining and retracting her withdrawal in 2012 and 2016, thus verifying and affirming her support for Mr. Gyau, their marriage, and her I-130 petition on his behalf.

16. We note, again, this statement, which is cited by USCIS is not in the record and could not be reviewed by the Beneficiary and/or counsel upon FOIA request and review. As such, the USCIS is utilizing statements made by Ms. Robinson which is not substantial and probative evidence of marriage fraud.

17. Further, the alleged 2005 withdrawal of the I-130 petition does not render derogatory information in the record in support of a fraudulent marriage, as Ms. Robinson attended subsequent I-130 interview with Mr. Gyau and she submitted two statements contradicting this alleged withdrawal. This vitiates any former withdrawal made.

C. **Ms. Robinson's March 16, 2010 Statement Which Was Not Provided by the Service and Not a Signed Affidavit.**

18. The Service is incorrectly and unfairly dismissing Ms. Robinson's 2012 and 2016 affidavits as evidence of bona fide former marriage and instead utilizing a statement she made under duress, that was not provided, as substantial and probative

evidence of marriage fraud, which is an abuse of power, and legally and factually incorrect. The District Director in her conclusion relies on March 16, 2010 statement from Ms. Robinson, which is legally and factually incorrect because the statement is not substantial and probative evidence of marriage fraud. Ms. Robinson's previous statement (which was made under duress and coercion and subsequently retracted) is not dispositive of finding that Ms. Robinson and Mr. Gyau's former marriage was fraudulent.

19. The validity and voracity of this statement and how USCIS sought Ms. Robinson out and used this statement against Mr. Gyau is an abuse of power and hearsay. The Service went on a fishing expedition with the purpose of getting and creating evidence to concoct and manufacture derogatory evidence to place in Mr. Gyau's record, which is an abuse of power and discretion and unsupported by law and agency policy.

## V. CAUSE OF ACTION

### A. Standard for Approval of I-130 Petition for Alien Relative

20. A United States Citizen wishing to sponsor her spouse for lawful permanent resident status must file with USCIS a Form I-130 Petition for Alien Relative. *See* 8 C.F.R. §204.1(a)(1), 204.2(a). The statutory provision authorizing the I-130 process provides, in relevant part, that "the Attorney General, shall, if he determines that the facts stated in the petition are true ..., approve the petition[.]" INA §204(b), 8 U.S.C. §1154(b). The test for a bona fide marriage under the immigration laws is whether at the time of the inception of the marriage, the parties intended to establish a life

together.  *Lutwak v. United States*, 344 U.S. 604 (1954); *Damon v. Ashcroft*, 360 F.3d
1084, 1089 (9th Cir. 2004);  *Matter of Laureano*, 19 I& N Dec. 1 (BIA 1983).

21. The INA further provides that "no petition shall be approved if... the alien has
previously been accorded, or has sought to be accorded, an immediate relative or
preference status as the spouse of a citizen of the United States... by reason of a
marriage determined by the Attorney General to have been entered into for the
purpose of evading the immigration[.]"  INA §204(c)(1), 8 U.S.C. §1154(c)(1).  A
determination of marriage fraud made pursuant to INA §204(c) must be supported
by "substantial and probative evidence."  *Bangura v. Hansen*, 434 F.3d 487, 502 (6th
Cir. 2006);  *see also* 8 C.F.R. §204.2(a)(1)(ii); *Matter of Tawfik*, 20 I & N Dec. 166, 167
(BIA 1990).  In order for evidence to be substantial, it must be "more than a scintilla,
and must do more than create a suspicion of the existence of the fact to be
established.  'It means such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion.'"  *Noriega v. Gonzales,* 2009 U.S. Dist LEXIS 68811,
at *11 (D.N.J. Aug. 6, 2009).

***B. Standard and Scope of Review***

22. As this Court has held, the APA, along with the federal question statute, provides
jurisdiction for review of a final agency action by USCIS to deny an I-130 petition.
*Asamoah*, 2010 U.S. Dist. LEXIS 126452, at *9.  A district court's review under the
APA is deferential and generally is limited to determining whether the agency action
is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. *Id.* at
*10; *see also Ohio Valley Envlt. Coal. V. Aracoma Coal*, 556 F.3d 177, 192 (4th Cir.
2009).  An agency decision is arbitrary and capricious if the agency fails to examine

relevant evidence or articulate a satisfactory explanation for its decision. *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42-43 (1983). A reviewing court "must overturn any finding of marriage fraud not supported by substantial and probative evidence." *Bangura*, 434 F.3d at 502.

23. Judicial review under the APA normally is limited to the administrative record that was before the agency when it made its decision. *Voyageurs Nat'l Park Ass'n v. Norton*, 381 F.3d 759, 766 (8th Cir. 2004). However, some courts have found that an incomplete record can be a basis for an exception to the rule. *See, e.g. Sabhari v. Cangemi*, 2005 U.S. Dist. LEXIS 3550, at *6-*- (D. Minn. Mar. 9, 2005) (decrying a "dearth of information" in the record pertaining to USCIS's denial of the plaintiffs' second and third visa petition, and upholding the judge's discovery order that was "narrowly tailored to the issue at hand and [] not overly burdensome").

24. Even though USCIS enjoys broad discretion to grant or deny immigrant petitions, this discretion is not unfettered. The agency cannot base it allegations and conclusions without substantial evidence. Where it does so, the agency's action is considered arbitrary and capricious and an abuse of discretion. *See* 5 U.S.C. § 706.

## A. The USCIS Has Not Met Its Burden Under Section 204 (c) of the Act As The Record Does Not Contain Substantial and Probative Evidence that Mr. Gyau's Former Marriage was Entered Into For the Purpose of Evading the Immigration Laws

25. The decision by USCIS denying Ms. Toku's I-130 Petition on behalf of her husband and the subsequent BIA decision affirming that denial, are not supported by substantial and probative evidence. There is no substantial or probative evidence that Mr. Gyau entered the marriage to Ms. Robinson to commit fraud or to procure an immigration benefit. The BIA's conclusion is based in speculation, particularly

where it discusses Ms. Robinson's two statements that are in the Record

contradicting the Service's erroneous speculation stating: "However, the

beneficiary's former spouse does not provide details of the purported 'set up' or

how/why she felt threatened.  Further, she offers no explanation as to her 2005

statement indicating that she did not live with the beneficiary after July 10, 2005."

Decision at 2.

26. However, the Board and Service summarily and erroneously dismisses Ms.
Robinson's statement in contrast to their speculation which does provide  details of
the purported 'set up' or how/why she felt threatened as well as an explanation
when she states:

> My ex-husband Nana Obour Gyau and I were married legally on March 8,
> 2005 and our marriage ended on July 27, 2010.  We live together at several
> addresses in Alexandria while we were married.
>
> I wrote an affidavit on June 11, 2011 swearing that I was coerced by USCIS to
> withdraw the I-130 petition that I filed on behalf of my ex-husband at our
> interview.  There have been questions raided why I waited to provide the
> affidavit after the interview.  I did not submit an affidavit sooner after the
> interview because I was unaware that anything could be done in response to
> the coercion I dealt with by USCIS officer.
>
> Approximately two years after the interview, I was advised that all of these
> details about an alleged 'set up' between me and my former husband were
> brought forward.  The facts are not true; I wrote the statement and withdrew
> the petition under distress after being threatened by the USCIS officer.  I was
> maltreated and coerced by USCIS officer.
>
> I married my former husband Nana in good faith but our relationship did not
> work out.  We had a bona fide marital relationship.
>
> He is married now to Elizabeth and it saddens me that the statements I made
> under duress and coercion could keep Nana from remaining in the U.S. and
> living with his current wife.
>
> Nana is a loving and kind-hearted man.  I whole-heartedly entered into the
> marriage in totally good faith and love and not for any other motive.

*See* BIA Appeal.

27. In her affidavit, which is evidence of coercion, Ms. Robinson states she was coerced and signed the statement under duress. It is concerning the Service is not considering Ms. Robinson's affidavits as evidence and puzzled what other "evidence" could be provided to show Ms. Robinson signed the statement under duress, other than her own affidavit. The Service cannot consider one statement signed by same person as substantial and probative evidence of marriage fraud, and not give equal or more weight to a sworn affidavit from Ms. Robinson provided of her own free will. We note, again, this statement, which is cited by the Board and USCIS is not in the record and could not be reviewed by the Beneficiary and/or counsel upon FOIA request and review.

28. Additionally, the Board advises "On March 16, 2010, a USCIS officer took a statement from the beneficiary's first wife" however, since the statement was not taken at a USCIS interview. There is no evidence on 1) how or what was said to her and during the interview and 2) no evidence on surrounding context and circumstances. Thus the statement itself is <u>tainted</u> and was not properly obtained in conjunction with USCIS interview rules within timeframe that is reasonable.

29. In order for a visa petition to be barred by INA 204(c), there must be "substantial and probative evidence" of such an attempt or conspiracy and the derogatory evidence must be contained in the alien's file. See 8 CFR 103.2 (b) (16) (i), 204.2(a) (1) (ii); <u>Matter of Tawfik</u>, 20 I&N Dec.166, 167 (BIA 1990). If there is substantial and probative evidence, "the district director must deny any subsequent visa petition for immigrant classification filed on behalf of such alien, regardless of whether the alien

received a benefit through the attempt or conspiracy. As a basis for the denial it is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy." See <u>Matter of Tawfik</u> at 167. In reaching such a conclusion, USCIS "......may rely on any relevant evidence, including evidence having its origin in prior Service proceedings involving the beneficiary, or in court proceedings involving the prior marriage. Ordinarily, the district director should not give conclusive effect to determinations made in a prior proceeding, but, rather, should reach his [or her] own independent conclusion based on the evidence before him [or her]." See <u>Matter of Tawfik</u> at 168. There is no such evidence in this case and the Service has not met its burden under 204 (c).

**B. The USCIS and BIA Erroneously Utilizes Hearsay Statement to Deny the I-130 Petition Which is Fundamentally Unfair**

30. The USCIS and BIA based their denials on irrelevant, uncorroborated hearsay evidence in Ms. Robinson's statement. This uncorroborated statement is directly contradicted by sworn affidavits from Ms. Robinson and her mother and documentary evidence provided by the Plaintiffs, which convincingly establish Mr. Gyau never engaged in marriage fraud and that his prior marriage was not entered into for the purposes of evading the immigration laws. The agencies unreasonably discounted and disregarded this rebuttal evidence. This reliance on hearsay is fundamentally unfair and thus should not be admissible in administrative proceedings and should be stricken from the record. Seghal v. Johnson, 105 F. Supp. 3d 860, 2015 U.S. Dist. LEXIS 63147; Ogbolumani v. Napolitano, 557 F.3d 729, 736 (7th Cir. 2009);; *see also Pouhova v. Holder*, 726 F.3d 1006, 1011 (7th Cir. 2013); *Olowo v. Ashcroft*, 368 F.3d 692, 699 (7th Cir. 2004).

31. The hearsay statement of Ms. Robinson as a basis for the agencies denial is remarkable as the record contains affidavits provided by Ms. Robinson and her mother contradicting the statement.

32. The affidavit by Ms. Robinson not at an interview at USCIS is a very troubling abuse of power and discretion since Mr. Gyau does not know the conditions under which the statements were made and the Service is taking Ms. Robinson's statements as fact and Mr. Gyau's statement and all other corroborating evidence including two contradicting statements by Ms. Robinson is being dismissed.

33. Despite the Service continuing to incorrectly conclude the Beneficiary's former marriage is fraudulent, the Service and Board dismissed an affidavit from the Beneficiary verifying he did NOT enter into a fraudulent marriage with his former wife, Ms. Latasha Robinson.  Mr. Gyau further indicates:

> My previous marriage to Ms. Latasha Robinson was the first step to my family life in the United States, it was never intended, contemplated, planned, or agreed to be fraudulent.  It was intended to be loving and faithful marriage, simple and humble beginning, while aiming and working towards greater heights as part of the American Dream.  My previous marriage to Ms. Latasha Robinson was totally in good faith, for the purposes of establishing life together and raising a family with one another. However, unfortunately due to many issues, including my ex-wife's substance dependency and her lack of faith in God, our marriage did not work.
>
> I realize that my marriage to Latasha was not a perfect one and that we had our problems.  But I fought very hard to make my marriage to her work. When I married her, I thought we would spend the rest of our lives together as husband and wife and have a family together. Unfortunately, I was wrong. But I have begun anew and am very much in love with my current wife Elizabeth.  We have been married for six years and we have a wonderful family and a home full of love, trust, honesty, and dreams about our future.  I pray that you believe these words and the evidence we have submitted and re-evaluate your decision.  Based on the lack of substantial and probative evidence on the record to determine my former marriage to Latasha was fraudulent, I respectfully request, the Service

approves the I-130 petition filed by my current wife, which would be consistent with the finding that my marriage to my former wife Latasha was NOT fraudulent.

*See BIA Appeal.*

34. The agencies have applied a glaring double standard in this case, discounting numerous sworn affidavits from direct witnesses to the marriage, Mr. Gyau, Ms. Robinson and her mother, and utilizing hearsay by Ms. Robinson solicited by USCIS while under duress. The agencies acceptance of Ms. Robinson's statement while at the same time unreasonably discrediting contradicting statements is arbitrary, unreasonable, and in violation of the agency's duty to fairly adjudicate petitions based on the totality of the evidence presented, as well as requirements for 204 (c) finding.

**C. The USCIS and BIA Are Requiring Evidence of Bona Fide Marriage Above Requirements and Case Law Which is Unreasonable and Abuse of Their Discretion**

35. The USCIS and BIA are disregarding substantive and probative evidence of bona fide marriage in the record and instead denying the petition. This is unreasonable and blatant abuse of discretion by the Service and BIA. The Service cannot provide examples of evidence an individual can provide to establish bona fide marriage and then summarily dismiss the evidence.

36. In visa petition proceedings, the petitioner has the burden of establishing eligibility for the benefit sought. *See Matter of Brantigan,* 11 I&N Dec. 493 (BIA 1966). In a case in which the bona fides of a marriage are challenged, the petitioner must present documentary or testimonial evidence to show that the marriage was not entered into for the primary purpose of evading the immigration laws. *Matter of*

*Phillis*, 15 I&N Dec. 385 (BIA 1975).  Evidence to establish a bona fide marriage may include:

a.  proof of joint ownership of property;
b.  proof of joint tenancy of a common residence;
c.  proof of commingling of financial resources;
d.  birth certificates of children born to the petitioner and the beneficiary;
e.  affidavits of others having knowledge of the bona fide nature of the marriage.

8 C.F.R. § 204.2(a)(1)(iii)(B).   Mr. Gyau and Ms. Toku have provided substantial documentation to verify the bona fide relationship of Ms. Robinson and Mr. Gyau as per the regulation.

37. In support of their bona fide marital relationship, with the petition filed by Mr. Gyau's current spouse, Elizabeth, substantial documentation was included to verify the bona fide relationship of Ms. Robinson and Mr. Gyau.  More than twenty different types of documentation verifying the bona fide relationship including:

1.    Copy of Joint Lease Agreements at: 8605 Village Way #E, Alexandria, VA 22309 (dated 01/01/2007-11/01/2009);

2.    Copy of Joint Lease Agreement at: 5303 Tessie Terrace, Alexandria, VA 22309 (dated 12/09/2009-12/31/2010);

3.    Copies of Joint Tax Returns for Years 2005-2008;

4.    Copies of Joint IRS Monthly Statements (dated 09/12/2007-05/19/2008);

5.    Copy of Joint Virginia DMV Registration and Certificate of Title showing shared address (dated 02/16/2006);

6.    Copy of Joint Wachovia Checking Statement (dated 12/23/2005-01/25/2006 and 07/25/2008-08/22/2008);

7.    Copy of Joint Chevy Chase Bank Savings Account;

8.    Copy of Void Check showing Joint Account and shared address (dated 02/14/2008);

9.    Copy of Joint CIGNA Health Insurance cards;

10.  Copy of Joint State Farm Insurance Information;

11.  Copy of Joint Dominion Utility Bill Statement (dated 12/21/2006);

12.  Copy of Employment Beneficiary Designation for Mr. Gyau indicating Latasha as Beneficiary and Spouse;

13.  Copy of Mail Received at shared address;

14.  Copy of 2008 W2 for Mr. Gyau and Ms. Robinson listing the same address of 8605 Village Way, Apt E, Alexandria VA 22309;

15.  Copy of Virginia Identification Card of Ms. Robinson issued in January 31, 2008 listing address as 8605 Village Way Apt E Alexandria, VA 22309-1605;

16.  Marriage Affidavits of Support testifying to bona fide marriage:
   - Latasha Robinson (ex-wife of Applicant)
   - Tammy A. Johnson (mother of Latasha Robinson)
   - Charles Asiedu-Kwarteng (friend of Applicant)

38. Federal courts have used several tests to determine whether a marriage was a sham and entered into for the purposes of evading immigration laws. The test generally used by the courts is whether the marriage was fraudulent-at-inception. This can be determined if the bride and groom did not intend to establish a life together and live in marital union. *Lutwak v. U.S,* 344 U.S. 604 (1954); *Bark v. INS,* 511 F.2d 1200 (9th Cir. 1 1975); *Matter of Mckee,* 17 I. & N. Dec. 332(BIA 1980); *Matter of Laureano,* 19 I. & N. Dec. 1 (BIA 1983). The courts have also looked to the petitioner's subjective state of mind. For USCIS to reasonably infer that the marriage was a sham, it should have documented evidence that the married couple was not living in the same residence and were not sharing financial resources and burdens. The conduct of the parties before and after their marriage is relevant to their intent at the time of their marriage. *Matter of Soriano,* 19 I. & N. Dec. 764 (BIA 1988). The Record contains included substantial evidence to verify

that Mr. Gyau and Ms. Robinson's marriage was bona fide at inception; they resided at several addresses together and shared financial resources and burdens.

39. Relying on hearsay statement made under duress according to Ms. Robinson to deny the instant petition which was manufactured by the Service, under the guise of Mr. Gyau and Ms. Toku not providing sufficient evidence to establish bona fide marriage, while summarily dismissing substantial and probative evidence that directly establishes the bona fide marriage is unreasonable and an abuse of discretion.

**D. The USCIS and BIA Did Not Allow Mr. Gyau to Address Ms. Robinson's Statement Which is an Abuse of Power and Direction**

40. In order to further investigate into the matter, at no point did USCIS interview Mr. Gyau about Ms. Robinson's statements. As such, the statements made should not be admissible and/or part of the record for Mr. Gyau's I-130 petition.

41. In the present case, USCIS bases its denial decision of Mr. Gyau's I-130 Petition on alleged fraud perpetrated by him and his first wife, Ms. Robinson. The entire basis of the Beneficiary' sham marriage finding is premised on USCIS's 2010 statement that Ms. Robinson made (which she claims was under duress and coercion). We note, this statement, which is cited by the Board and USCIS is not in the record and could not be reviewed by the Beneficiary and/or counsel upon FOIA request and review. Further, USCIS does not have any independent investigative evidence showing that the two conspired to commit marriage fraud. Instead, what they have is little more than a statement made under duress and coercion which was subsequently retracted by Ms. Robinson in her affidavits.

42. USCIS, in their NOID and denial decision, focus <u>solely</u> on the actions of Ms. Robinson. However, USCIS fails to take into consideration that Mr. Gyau may have married Ms. Robinson for love and Ms. Robinson that financial hardship to Ms. Robinson due to his status created conflicts. USCIS have offered no independent evidence to suggest that Mr. Gyau was knowingly conspiring with Ms. Robinson to defraud the government for the purposes of obtaining immigration benefits.  They just infer and erroneously conclude he did. However, in fact, Ms. Robinson retracted the statement in two sworn affidavits and advised the statement was made under duress and coercion.

43. The District Director in her conclusion relies on an alleged previous withdrawal request by Ms. Robinson dated September 1, 2005.   We note this withdrawal request was not discussed at all in the Service's NOID.  We also note the withdrawal request was not provided.  As such, the Service did not afford the Petitioner an opportunity to address the Service's use of the withdrawal and they are incorrectly using the withdrawal request as substantive and probative evidence of marriage fraud.

44. Further, the Service is incorrectly dismissing Ms. Robinson's 2012 and 2016 affidavits as evidence of bona fide former marriage and instead utilizing a statement she made under duress, that was not provided, as substantial and probative evidence of marriage fraud, which is an abuse of power, and legally and factually incorrect. The District Director in her conclusion relies on March 16, 2010 statement from Ms. Robinson, which is legally and factually incorrect because the statement is not substantial and probative evidence of marriage fraud.   Ms.

Robinson's previous statement (which was made under duress and coercion and subsequently retracted) is not dispositive or relevant in finding that Ms. Robinson and Mr. Gyau's former marriage was fraudulent.

45. The substantial evidence standard requires the court "must determine whether substantial evidence supports a finding by *clear and convincing evidence* that [the beneficiary] committed marriage fraud." *Id.* at 881 (quoting *Khodagholian v. Ashcroft*, 335 F.3d 1003, 1006 (9th Cir. 2003). In this case, there is <u>no clear and convincing evidence</u> that Mr. Gyau committed marriage fraud with Ms. Robinson. The Service is using statement by Ms. Robinson, as a reason to deny the I-130 petition. This is not clear and convincing evidence that Mr. Gyau committed marriage fraud; only what Ms. Robinson thought at the time about their former marriage which was subsequently retracted and contradicted. This is not substantial evidence of marriage fraud but hearsay and its use is fundamentally unfair and unreasonable.

46. In one of the leading cases regarding INA §204(c), the BIA finds that the focus is on the alien in that "the statute itself does not mention actions taken by United States citizen or lawful permanent resident spouses but instead focuses on aliens." *Matter of Kahy*, 19 I & N Dec. 803, 806 (1988). The Court further established that "where there is evidence in the record to indicate that the beneficiary has been an *active participant* in a marriage fraud conspiracy, the burden shifts to the petitioner to establish that the beneficiary did not seek nonquota or preference status based on a prior fraudulent marriage." *Id.* In this case, there should not be any shift in the evidentiary burden because the record does not suggest that Mr. Gyau engaged in

marriage fraud.  There is no evidence in the record pointing to the fact that he entered the marriage without the intent to make a life with Ms. Robinson.  To the contrary there are statements in the record confirming the bona fide marriage between Ms. Robinson and Mr. Gyau.  All USCIS can point to is statement made by Ms. Robinson, but the inquiry into the bona fide nature of marriage subsequent to Ms. Robinson's statement was never done nor where her other affidavits considered.

47. As such, the process by which Mr. Gyau and Ms. Toku's I-130 petition was denied was an inadequate basis and contrary to prevailing case law. There were two witnesses to the marriage: Mr. Gyau and Ms. Robinson. In this case, it is not possible to determine that Ms. Robinson's statement was true and her subsequent statements are false solely by reading them. In addition, Mr. Gyau presented documentary evidence to corroborate his claim that the marriage was bona fide. Therefore, under the specific circumstances of this case, due process requires a hearing with an opportunity for Mr. Gyau to address Ms. Robinson's statements.

E. **The USCIS and BIA Are Utilizing Ms. Robinson's Hearsay Statement and Yet Not Given Weight to Her Subsequent Statements Which is An Abuse of Power and Discretion**

48. The Service is incorrectly dismissing Ms. Robinson's sworn affidavit as substantive and probative evidence of bona fide former marriage and instead utilizing a former statement and withdrawal by Ms. Robinson as substantial and probative evidence of marriage fraud, which is an abuse of power, and legally and factually incorrect.

The Service cannot consider Ms. Robinson's former statement and withdrawal as substantial and probative evidence of marriage fraud, while not giving equal or more weight to subsequent sworn affidavit from Ms. Robinson.

49. Therefore, the Service is erroneously dismissing affidavits from Mr. Gyau, Ms. Robinson, and Ms. Robinson's mother, Tammy A. Johnson as evidence, and making erroneous conclusions, despite documentation contradicting to their false conclusion.   USCIS cannot require certain primary evidence and hold such documents as proof of a bona fide marriage and then summarily dismiss them.  This creates a problem for petitioners and applicants like Mr. Gyau and Ms. Toku because USCIS creates a policy where most documents are rejected.  This policy would then be contrary to due process and fairness because it does not allow couples to present many documents without fearing that USCIS will dismiss the evidence and make a finding of a sham marriage.

50. In sum, it is evident that USCIS and the BIA do not have substantive and probative evidence in the record to support their §204(c) finding.  Thus, this conclusion is both arbitrary and capricious. It is evident that USCIS and the BIA erred by ignoring the substantial documentary evidence provided in support of the I-130 petition. The agency's decision also amounts to an abuse of discretion, in that the agencies failed to adjudicate the I-130 petition in accordance with the governing statute and regulations or its own published guidance.

## VI.     PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that this Court.

1.  Declare unlawful and set aside the Defendant USCIS's decision dated November 18, 2016 and the BIA's January 23, 2018 opinion affirming that decision;

2.  Approve the I-130 Petition for Alien Relative filed by Plaintiff Elizabeth Toku on behalf of Plaintiff Nana Gyau.

3.  Award reasonable attorney's fees and costs of the Court under the Equal Access to Justice Act; and

4.  Grant such other and further relief as this Court deems proper.

    Respectfully submitted on this 22nd day of February 2018.


Danielle Beach-Oswald
*Counsel for Plaintiffs*
DC Bar # 489356
Beach-Oswald Immigration Law Assocs., P.C.
888 17th St. N.W., Suite 310
Washington, D.C. 20006
Tel: (202) 331-3084

## LIST OF ATTACHMENTS

*Description*

1.      Copy of BIA's decision dated January 23, 2018 . . ........ . . . . . . . . . . . . . . . . . . . . . . . 27-30
2.      Copy of USCIS's denial dated November 18, 2016.......... . . . . . . . . . . . . . . . . . . . .31-37